IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAZARRIES DIAMOND SMITH,

                Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

OPINION AND ORDER

20-cv-538-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff Lazarries Diamond Smith seeks judicial review of the Social Security Commissioner's final determination, which upheld the opinion of Administrative Law Judge ("ALJ") Christopher Messina that Smith was not disabled. On appeal to this court, plaintiff maintains that the ALJ erred in two respects: (1) by evaluating Smith's statements about the limiting effects of his symptoms in violation of SSR 16-3p; and (2) by crafting a residual functional capacity ("RFC") that is not supported by substantial evidence. The court held a telephonic hearing on plaintiff's appeal on April 29, 2021, at which the parties appeared by counsel. For the reasons that follow, the court will remand the decision for rehearing.

BACKGROUND[1]

**A. Overview**

Plaintiff Lazarries Diamond Smith was born on May 11, 1997, which made him 20 years old on the date his application for supplemental security income was filed and,

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #14.

unsurprisingly, a "younger individual" under 20 C.F.R. § 416.963. Smith does not have a history of substantial gainful activity, although he was employed in a part-time capacity (20 hours per week) as a janitor from October 5, 2017, through the date of the ALJ hearing in this case. There are also references in the ALJ's opinion (and elsewhere in the record) to plaintiff receiving social security benefits as a child, although they were terminated while he was in high school. Smith is a high school graduate and able to communicate in English. In his application, Smith specifically claimed disability based on learning problems and hip dysplasia. (AR 60.)

### B. ALJ Decision

ALJ Messina held a video hearing on August 7, 2019, at which Smith appeared both personally and by counsel. On August 15, 2019, the ALJ issued an opinion finding that Smith had not been under a disability within the meaning of the Social Security Act from his application date of October 16, 2017, through the date of the hearing. At the same time, the ALJ determined that Smith had the following severe impairments: "learning disability, attention deficit hyperactivity disorder, depression with mood disorder, intermittent explosive disorder, obesity, and hip dysplasia." (AR 15.)

Next, the ALJ considered whether Smith's impairments or combination of impairments met or medically equaled a Listing, concluding that they did not. (AR 16-21.) Smith accepts the ALJ's conclusion that he did not meet Listing 1.02 (major disfunction of a joint) and does not challenge the ALJ's discussion of how Smith's obesity contributes to functional limitations. Instead, he challenges the ALJ's discussion of Smith's mental impairments -- in particular, the ALJ's conclusions with respect to Smith's

2

"paragraph B" criteria are relevant to the challenge to the RFC findings as to his mental health issues. The ALJ noted that the state disability psychological consultants found no psychological impairments; thus, the ALJ deemed their opinions "generally unpersuasive." (AR 18.) Instead, the ALJ turned for guidance to the records of plaintiff's treatment with nurse practitioner Audrey Addaquay-Corey, apparently relying on this treatment history to find paragraph B limitations. Specifically, the ALJ concluded that Smith had moderate limitations in all four categories identified by that paragraph: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace ("CPP"); and (4) adapting or managing oneself. (AR 18-20.)[2] Nevertheless, the ALJ determined that Smith had the residual functional capacity ("RFC") to perform medium exertion work, limited to "only occasionally operate foot controls" and "unable to climb ladders, ropes or scaffolding." (AR 21.) With respect to his mental limitations, the ALJ concluded that Smith

> an understand, remember, and carry out no more than simple instructions. The claimant can occasionally make work-related decisions[,] as well as occasionally adapt to changes within the work setting. The claimant is unable to interact with the public, but can occasionally interact with coworkers and supervisors.

(AR 21.)

In formulating this RFC, the ALJ considered Smith's statements about his limitations, but concluded that his statements were not entirely consistent with the evidence. First, the ALJ found that Smith's work activity demonstrates that he is "able to

---

[2] The court reviews the ALJ's reasoning as to these findings -- in particular, his findings as to the CPP category -- in the opinion below.

do some work, which contradicts his allegations of disability." (AR 22.) In particular, the ALJ noted Smith's ability to "persist as a cleaner at Peterson Cleaning," his managers' comments that they "love[d] him and were very impressed that he showed up and got right to work," and his statements that he was "happy with his janitorial job, stating that it did not aggravate his disabilities." (AR 22.) Second, the ALJ noted Smith's statements that he could not "stand or walk for prolonged periods," but discounted this on the basis that he told nurse practitioner Addaquay-Corey that he was going to the gym and walking for exercise in an attempt to lower his weight and reduce his risk for diabetes. Third, the ALJ considered plaintiff's medications and any side effects from this medications, but placed little weight on Smith's statements that medication causes drowsiness or dizziness because he did not report these side effects to his treatment providers. (AR 23.) Fourth, the ALJ noted "noncompliance issues scattered through the record," specifically emphasizing Division of Vocational Rehabilitation ("DVR") records indicating Smith failed to appear at some scheduled appointments and missed his first scheduled physical therapy appointment. (AR 23.) Fifth, the ALJ considered the fact that Smith had received disability benefits as a child, while noting that IQ testing and Global Assessment of Functioning ("GAF") scores from June 2013 indicate that by age 16, Smith scored within the average IQ range and had a GAF score of 70, which corresponds with mild symptoms. (AR 23.) *See* "What Is the Global Assessment of Functioning (GAF) Scale?," WebMD, https://www.webmd.com/mental-health/gaf-scale-facts.

The ALJ also stressed that he had incorporated the opinions of the state disability medical consultants' opinions that found plaintiff could perform medium exertion. As for

4

Smith's mental health limitations, the ALJ simply repeated the same language in defining the RFC, stating:

> I find that he can understand, remember, and carry out no more than simple instructions. I find that the claimant can occasionally make work-related decisions as well as occasionally make work-related decisions as well as occasionally adapt to changes within the work setting. Finally, I find that the claimant is unable to interact with the public, but can occasionally interact with coworkers and supervisors.

(AR 24.)

With the assistance of the vocational expert, the ALJ ultimately determined that there were jobs in significant numbers in the national economy that Smith could perform with this RFC, citing as examples dryer attendant, box bender and general helper. As such, the ALJ concluded that plaintiff was not under a disability from the date he filed his application on October 16, 2017, through the date of his decision.

### C. Summary of Medical Record

Smith was born with congenital dislocation of both hips, which required him to undergo surgery at one month of age and confined him for months afterward in a spica cast. (AR 623-25.) During the period of time material to Smith's social security claim, he consistently described pain in his hips. (AR 200-03, 208, 535, 564, 593, 615.) There is, however, no record of any treatment for his hip pain, other than taking over-the-counter naproxen and perhaps some physical therapy. Even then, the only reference is to a missed physical therapy appointment. Hip x-rays from May 2017 were also normal, and during a June 2017 examination, Nicholas Defauw, D.O., reported normal external range of motion in both hips, intact sensation and a negative log roll on both hips, although Dr. Defauw

5

noted tenderness to palpation of both hips and gluteus medius weakness. (AR 537-38.) In a Function Report that Smith completed in October 2017, he also represented that hip pain made it difficult for him to sleep, dress himself, and stand in the shower. (AR 201.) He further reported being unable to walk far without breaks. (AR 203.) In addition, Smith reported that his hip pain made it difficult for him to perform his part-time job, though he persisted. (AR 593, 613.) On its part, the Commissioner points out (as did the ALJ) that a treatment note from April 2018 indicates Smith reported he was going to the gym and walking for exercise. (AR 22 (citing AR 602).)

Smith's hip pain was exacerbated by his weight. Throughout the period relevant to his social security application, Smith was obese, weighing approximately 275 pounds at 5' 8" tall, resulting in a BMI of over 40.

As for his mental health, Smith underwent an assessment for therapy on June 2, 2017, with Alicia Oczus, LPC, because his mother reported he had "anger and mood issues," and specifically reported physical fights with his brother. (AR 320.) He was also homeless at that time. The assessment noted that his affect was flat, his insight was "poor," and his intellectual functioning was "below average." (AR 322.) Oczus specifically noted that Smith "seemed to struggle with typical therapeutic language and questions this writer had asked," but that he "understood simple and specific questions." (AR 323.) On June 21, 2017, Smith saw Oczus again, during which he reported that he was feeling depressed and anxious. At that time, Oczus noted that his affect was "flat," mood was anxious and depressed, behavior was "withdrawn," and concentration was "poor." (AR 548-49.) Oczus also noted plaintiff's difficulty in answering her questions. On August 3, 2017, Smith

6

attended another therapy session, where Oczus described stressful events in Smith's life and noted that his mood was "[e]uthymic" and "irritable," but found his affect was "[a]ppropriate" and that his concentration was "[g]ood without impairment." (AR 557.)

On September 12, 2017, Smith saw Nurse Practitioner Audrey Addaquay-Corey, as noted above, to address anger issues and anxiety. At that time, Addaquay-Corey diagnosed Smith with major depressive disorder and recurrent, moderate and unspecified mood (affective disorder), prescribing him Latuda (or Lurasidone) and directing him to continue therapy. (AR 561-62.) On October 20, 2017, Smith had a follow-up appointment with Addaquay-Corey in which he reported starting his first job and after starting on the Latuda, feeling "less angry" and not feeling "anxious or depressed." (AR 564.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Specifically, findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Similarly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the

responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Thus, plaintiff's two core challenges on appeal must be considered under this deferential standard, which the court will address in turn.

**I. Evaluation of Smith's Statements Under SSR 16-3p**

While plaintiff presents his arguments in two overarching challenges, he asserts a number of more specific arguments positing errors on the part of the ALJ in his treatment of Smith's subjective statements. Under SSR 16-3, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 (superseding SSR 96-7p); *see also* 20 C.F.R. § 416.929. If the ALJ answers this question affirmatively, then he will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, at *2.7 When faced with a discrepancy between the objective evidence and the claimant's subjective complaints, the ALJ is to resolve the discrepancy by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and

other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

*First*, plaintiff faults the ALJ for relying on Smith's part-time work to find that he was not disabled.[3] As detailed above, the ALJ stated in his decision, "[a]lthough the claimant's work activity does not rise to substantial gainful activity levels, as discussed above, it does demonstrate that he is able to do some work, which contradicts his allegations of disability." (AR 22.) Viewed in isolation, the court agrees that this statement is problematic for the reasons provided in *Abrahamson v. Berryhill*, No. 16-CV-699-WMC, 2019 WL 1219441, at *4 (W.D. Wis. Mar. 15, 2019). *See also Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017) ("Part-time work is not good evidence of ability to engage in full-time employment, especially as [claimant] was able to continue working part-time only because some managers gave her easier shifts and other preferential treatment [including] . . . help from coworkers, . . . unscheduled breaks, and [the ability to] wr[i]te everything down without abbreviation[.]").

Here, the ALJ does not explain why Smith's ability to work a 20-hour per week job is inconsistent with his statements that he could not work more than that amount on a weekly basis, and, therefore, inconsistent with a finding that he is disabled as defined under Social Security Regulations. *See* SSR 96-8p (requiring an ALJ to determine the claimant's RFC, which is the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," where "'regular and continuing

---

[3] Before this argument, Smith also posits a general argument that the ALJ failed to fully describe Smith's testimony during the hearing, but in making this argument, plaintiff does not point to specific aspects of his testimony that were ignored and would have made a difference.

9

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). That said, in reviewing the ALJ's full discussion of Smith's part-time work, the ALJ appears to rely on Smith's ability to persist as a cleaner, his enjoyment from that job, and his managers' statements that they loved him and were impressed with his work ethic. (AR 22.) In light of this more robust discussion, there is likely no error. *See Bruno v. Saul*, 817 F. App'x 238, 242-43 (7th Cir. 2020) ("It was not patently wrong from the ALJ to take from Bruno's part-time bakery work, along with other record evidence, that he had the ability to work full-time."). Still, as explained below, the court has determined that remand *is* warranted to address directly plaintiff's CPP moderate limitations in crafting his RFC. Accordingly, the ALJ may further explain his or her reasons for relying on Smith's ability to work on a *part-time* basis in evaluating his subjective statements as proof of the ability to work full-time.

*Second*, plaintiff contends that the ALJ erred in failing to evaluate the limited effectiveness of his medicine and their side-effects. As for the medications' side effects -- namely, drowsiness and dizziness -- the court finds no error in light of the ALJ's decision to discount plaintiff's statements about side effects because he only reported them in social security reports and not report the side effects to any treatment providers. (AR 23.) As for effectiveness of these medications, plaintiff faults the ALJ for failing to acknowledge the need for medication adjustments as "indicative of unimproved mental condition." (Pl.'s Br. (dkt. #17) 14.) However, the record reveals only one medication change -- an April 2018 increase in his Vyvanse dosage, prescribed to treat ADHD, after which Smith reported that he was able to focus better. (AR 602, 605.) Moreover, the ALJ noted that

despite these medications, plaintiff still had some difficulty focusing and reported that he still occasionally felt angry. (AR 18, 20 (citing AR 599, 605).) Thus, the ALJ did not ignore this evidence, as plaintiff contends.

*Third*, plaintiff contends that the ALJ failed to provide a sufficient explanation for discounting Smith's statements that he was unable to stand or walk for prolonged periods. However, the ALJ *did* describe his reasons for discounting Smith's reported limitations on standing and walking, specifically citing treatment records revealing: a consistently normal gait; that he was going to a gym and walking for exercise; normal hip x-rays; and a physical examination that showed normal external range of motion. (AR 16-1, 22, 24 (citing AR 537, 602).) Again, the court finds no error with respect to this challenge.

*Fourth*, plaintiff points to the ALJ's statement that there are "noncompliance issues scattered throughout the record" to infer a failure to adequately explore the reasons for noncompliance or how and whether noncompliance factored into the ALJ's discounting of Smith's subjective statements. (Pl.'s Br. (dkt. #17) 17 (quoting AR 23).) Viewed in isolation, the court agrees that this statement is problematic in light of the Seventh Circuit's requirement that an ALJ must ascertain the reason for noncompliance before drawing inferences from it. *E.g., Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment. SSR 96–7p. However, the ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's

11

explanations as to the lack of medical care." (internal citation and quotation marks omitted)).

Viewing the ALJ's statement in context, however, undercuts plaintiff's challenge. Specifically, the ALJ went on to address expressly two noncompliance issues: that Smith failed to appear for scheduled appointments with his DVR counselor; and that he failed to attend his first scheduled physical therapy appointments. (AR 23.) Further, as to both, the ALJ explained that these attendance issues were not of concern given that Smith was doing so well in his job and was encouraged to follow therapy recommendations and complete the exercises. As such, it is reasonable to infer that the ALJ did not place any weight on "noncompliance" in discounting Smith's credibility. This argument, however, raises a question as to whether the ALJ *should* have noted these instances of noncompliance in evaluating plaintiff's mental health limitations, particularly with respect to concentration and to crafting an RFC, but this argument is better addressed in the next section of this opinion.

## II. Lack of Substantial Evidence Supporting RFC

Plaintiff contends that the ALJ erred in crafting the RFC or, more specifically, in supporting that RFC with substantial evidence. Here, too, plaintiff posits several, discrete arguments, which the court will take up in turn, finding merit in particular with plaintiff's criticism of the ALJ in purporting to address Smith's moderate limitations in CPP in formulating his RFC.

As described above, the ALJ included three nonexertional limitations in the RFC: (1) can understand, remember, and carry out no more than simple instructions; (2) can

occasionally make work-related decision as well as occasionally adapt to changes within the work setting; and (3) is unable to interact with the public, but can occasionally interact with coworkers and supervisors.  (AR 21.)  Plaintiff contends that the ALJ failed to build a logical bridge between these limitations and his finding that Smith had moderate limitations in CPP.[4]  As both sides acknowledge, this is a familiar challenge.  Indeed, the Seventh Circuit has now repeatedly explained that a limitation to "simple, routine tasks" is often insufficient to account for CPP limitations, thereby rendering deficient both the RFC formulation and opinions by a vocational expert.  *See, e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 617 (7th Cir. 2010) (ALJ should refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do"); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." (citation and quotation marks omitted)).

---

[4] During the hearing, counsel for the Commissioner pointed out that under a revised regulation from January 2017, the agency clarified that "moderate limitation" meant that an individual's functioning in that area was "fair."  20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(2).  But providing additional guidance on the definition of "moderate" does not relieve the ALJ from considering moderate limitations in formulating an RFC, or at least the Commissioner offered no caselaw so holding.  *See Baumann v. Saul*, No. 20-CV-11-WMC, 2020 WL 7237921, at *3 (W.D. Wis. Dec. 9, 2020) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)).

The Seventh Circuit has carved out an exception to this general guidance where "an ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). As plaintiff points out, however, the state agency psychological consultants here found *no* limitations -- a finding that the ALJ himself found "unpersuasive." As a consequence, there are no medical expert opinions translating the ALJ's finding of moderate limitations in CPP into appropriate RFC limitations.[5]

The Seventh Circuit has also carved out a second exception to the *O'Connor-Spinner* rule where the ALJ adequately identifies the specific CPP limitation and explains why the RFC restrictions address those specific limitations. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (concluding that restricting the plaintiff to simple, repetitive tasks and limited interactions with others was sufficient to accommodate the plaintiff's CPP limitations because the record reflected that "his impairments surface only when he is with other people or in a crowd"). However, the ALJ simply states here that he made the findings of nonexertional limitations in the RFC without providing *any* explanation for these limitations. (AR 24.) While the court agrees with the Commissioner that the ALJ has "final responsibility" to determine a claimant's RFC, *Fanta v. Saul*, No. 20-2325, 2021

---

[5] During the oral argument, counsel for the Commissioner argued that the Seventh Circuit has modified its position on an ALJ's treatment of CPP limitations in crafting an RFC, directing the court to a recent decision in *Pavlicek v. Saul*, No. 20-1809, 2021 WL 1291614, at *4 (7th Cir. Apr. 7, 2021). However, in *Pavlicek*, the Seventh Circuit relied on the ALJ's citation to two medical experts' opinions, both finding that the claimant's moderate limitations in CPP could be accommodated by limiting him to simple, routine tasks. Here, we have no such opinion.

WL 961647, at *2 (7th Cir. Mar. 14, 2021), the ALJ is still required to build a logical bridge from the evidence in the record to his RFC findings.[6]

To be fair, the ALJ provides a more robust discussion of Smith's moderate limitations in CPP at step 3, as part of describing why Smith's impairments do not meet or medically equal any listing. In support of his finding of moderate limitations in CPP, the ALJ pointed to: (1) therapist Oczus's treatment notes indicating that Smith struggled answering typical therapeutic questions; (2) Nurse Practitioner Addaquay-Corey's observations that Smith's concentration was "decreased" and his thought process was "circumstantial"; and (3) Smith's own reports that he did not know how to pay bills, count change or manage a bank account, but was able to watch television every day and felt comfortable with his cleaning job duties. (AR 20.) However, this discussion also stops short of explaining the specific nature of plaintiff's CPP limitations or how nonexertional restrictions in the RFC address those limitations.

The Commissioner's opposition brief on this issue is telling: he essentially ignores it, other than to argue generally that plaintiff's challenges to the RFC fail because he "does *not* assert that the record supported greater limitations than the ALJ found." (Def.'s Opp'n (dkt. #19) 15 (citing *Recha v. Saul*, 843 F. App'x 1 (7th Cir. 2021) ("Recha has not provided any other credible medical evidence indicating that his symptoms required additional RFC restrictions to account for CPP limitations beyond those included in the ALJ's decision.")). Viewing plaintiff's briefing generously, however, he pointed the court to

---

[6] In this regard, *Fanta* does not establish new law. *See Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide.").

evidence in the record demonstrating his inability to gather sufficient focus to complete basic tasks without reminders, including evidence that: he relied on his mother to manage his money, remind him to take his medication and to take out the trash; and he missed appointments as described above. (Pl.'s Br. (dkt. #17) 13 (citing AR 51-52); *see also* AR 46-51 (describing that he forgets appointments and needs reminders to take care of himself).) Moreover, plaintiff points out that the ALJ specifically asked the vocational expert if an individual who needed reminders to stay on task three times a day would be employable, to which the vocational expert responded that he would not. (*Id.* (citing AR 54-55).) Perhaps the limitation to simple work would adequately address plaintiff's concentration issues, but the ALJ failed to explain or cite evidence to support such a finding adequately. On this basis, the court agrees with claimant that remand in warranted.

Plaintiff raises four other challenges about the RFC, but none of them, at least viewed independently, warrant remand. Even so, on remand, the ALJ may of course, conduct further inquiries and provide a more robust explanation for formulating the RFC in light of the possible cumulative impact of these other issues. Accordingly, the court will briefly address them. Plaintiff argues that in limiting him to "occasional work related decisions," the ALJ simply addressed frequency, without limiting him as to the *type* of decisions he would be required to make, although this argument does not appear to take into consideration the RFC's limitation of plaintiff to simple, routine work. Plaintiff also argues that the ALJ failed to explain adequately why Smith could tolerate interactions with supervisors. Here, too, the court finds the ALJ's reliance on evidence in the record that he got along with his managers at his part-time job provides adequate support for this

16

component of the RFC.  Next, plaintiff faults the ALJ for relying on dated mental limitations assessments – namely, 2013 IQ and GAF scores.  In fairness, however, the ALJ noted the tests were "remote" in times, and it was at least reasonable for the ALJ to rely on the IQ score, which is unlikely to have changed over time, especially since the ALJ *also* relied on other treatment records during the pertinent period.  Finally, plaintiff challenges the ALJ's reliance on the state agency medical consultants' review, citing evidence of treatment records post-dating that review.  However, plaintiff points to no new diagnoses, nor meaningful change in Smith's condition, requiring the ALJ to seek out new opinions, something plaintiff implicitly recognized by dropping this challenge in reply.  *See Moreno v. Berryhill*, 882 F.3d 722, 728-29 (7th Cir. 2019), *as amended on reh'g* (Apr. 13, 2018) (explaining that an ALJ is only required to seek a new medical opinion if "later evidence contain[s] new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion.")[7]

---

[7] While plaintiff's counsel was successful in identifying error requiring remand in this case, the court would be remiss not to note that plaintiff's scattershot approach creates a burden on the court and on the Commissioner.  The court would encourage plaintiff's counsel in future appeals to focus his arguments to those with the most traction.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Lazarries Diamond Smith's application for supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered this 3rd day of May, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge